UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

F.H. PASCHEN, S.N. NIELSEN &
ASSOCIATES LLC,

                                    Plaintiff,

         versus

HISCOX, INC. on behalf of CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON,
and/or HISCOX USA and/or  HISCOX
SYNDICATES for and on behalf of HISCOX
SYNDICATE 3624 AT LLOYDS, YORK RISK
SERVICES GROUP, INC. (f/n/a YORK
CLAIMS SERVICE, INC.), and MADSEN,
KNEPPERS AND ASSOCIATES, INC.,

                                    Defendants.

CIVIL ACTION

NO.: 2:13-cv-05843

JUDGE:  TRICHE MILAZZO

MAGISTRATE:  KNOWLES

**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT
FOR DECLARATORY JUDGMENT AND DAMAGES**

NOW   COMES   Defendant,   HISCOX   DEDICATED   CORPORATE   MEMBER
LIMITED,  THE  SOLE  MEMBER  OF  LLOYD'S  OF  LONDON  SYNDICATE  3624  AND
SUBSCRIBER  TO  POLICY  NO.  UNS2511179.10  (incorrectly identified in the Complaint as
"Hiscox, Inc. on behalf of Certain Underwriters at Lloyd's, London, and/or Hiscox USA and/or
Hiscox Syndicates for and on behalf of Syndicate 3624 and hereinafter referred to as "Hiscox"),
by and through its attorneys, and for its Answer and Affirmative Defenses to the Complaint of
Plaintiff F.H. PASCHEN, S.N. NIELSEN & ASSOCIATES LLC (hereinafter "Paschen"), states
as follows:

## JURISDICTION AND VENUE

1.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 1, and the same, therefore, are denied.

2.

Defendant Hiscox denies the allegations contained in Paragraph 2, except to admit Hiscox is a corporation organized under and with its principal place of business in England. All remaining allegations are denied.

3.

Defendant Hiscox admits the allegations of Paragraph No. 3.

4.

Defendant Hiscox admits the allegations of Paragraph No. 4.

5.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 5, and the same, therefore, are denied.

6.

Defendant Hiscox admits the allegations of Paragraph No. 6.

## BACKGROUND

7.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 7, and the same, therefore, are denied.

8.

Defendant Hiscox admits that it subscribes to Builders Risk Policy Number UNS2511179.10 (the "Policy") issued to FH Paschen with an effective date of September 7,

2

2010 specifically insuring against loss on the Project, subject to the terms, conditions, limitations and exclusions of the Policy. Defendant Hiscox further admits that the Policy was in force and effect on the date Hurricane Isaac made landfall. Defendant Hiscox denies the remaining allegations of Paragraph No. 8.

9.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 9, and the same, therefore, are denied.

10.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 10, and the same, therefore, are denied.

11.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 11, and the same, therefore, are denied.

12.

Defendant Hiscox admits that by letter dated September 7, 2012, Paschen notified Hiscox in writing of a potential claim under the Policy for damage to the Project due to Hurricane Isaac. Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 12, and the same, therefore, are denied.

13.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 13, and the same, therefore, are denied.

14.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 14, and the same, therefore, are denied.

3

15.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 15, and the same, therefore, are denied.

16.

Defendant Hiscox admits the allegations of Paragraph No. 16.

17.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 17, and the same, therefore, are denied.

18.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 18, and the same, therefore, are denied.

19.

Defendant Hiscox admits that between September 17, 2012 and December 13, 2012, MKA made various site inspections at the Project site.  Defendant Hiscox denies the remaining allegations of Paragraph No. 19.

20.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 20, and the same, therefore, are denied.

21.

Defendant Hiscox admits that on or about November 20, 2012, Paschen submitted to York a 16-volume document labeled South Plaquemines High School Hurricane Isaac Repair Estimate, dated November 20, 2012, with a total estimate amount of $32,800,152 allegedly representing a total loss and 100% re-construction of the subject buildings to the time of the loss. Defendant Hiscox denies the remaining allegations of Paragraph No. 21.

4

22.

Defendant Hiscox denies that Paschen submitted Repair estimates by the end of 2012. Defendant Hiscox states that Paschen submitted binders of documents on or about November 20, 2012 allegedly representing a complete and total loss and 100% re-construction of the subject buildings to the time of the loss. The subject building was not a total loss. This conduct along with other conduct of Paschen delayed the claims adjustment process. Defendant Hiscox admits that as of 12/31/12 it had not advanced any funds to Paschen. Defendant Hiscox states that it first advanced funds to Paschen on or about January 8, 2013 in the amounts of $1,540,903.90. Defendant Hiscox denies the remaining allegations of Paragraph No. 22.

23.

Defendant Hiscox admits that on or about January 2, 2013 Paschen received an initial MKA loss estimate in the amount of $6,249,771.00, which was less than the $32,800,152 total loss and 100% re-construction estimate of Paschen. Defendant Hiscox further admits that the initial MKA loss estimate made no reference to Paschen's $32,800,152 total loss and 100% re-construction estimate, which was still under review by MKA. Defendant Hiscox admits that York did discuss with Marsh at that time a requested advance, net of deductible, of $1.5 million. Defendant Hiscox denies the remaining allegations of Paragraph No. 23.

24.

Defendant Hiscox asserts that on January 8, 2013, it issued to Paschen an advance payment in the amount of $1,540,903.90. Defendant Hiscox denies all allegations of Paragraph No. 24 that are inconsistent with this payment made by Hiscox in accordance with the terms and conditions of the Policy. Defendant Hiscox denies the remaining allegations of Paragraph No. 24.

10703143.1

25.

Defendant Hiscox admits that on or about February 6, 2013, Paschen's management met with representatives of York and MKA to discuss differences in scope of damage and repairs and next steps for Paschen to be able to properly present and calculate its claim.  Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 25, and the same, therefore, are denied.

26.

Defendant Hiscox admits that areas of disagreement were discussed at the February 6, 2013 meeting.  Defendant Hiscox denies the remaining allegations of Paragraph No. 26.

27.

Defendant Hiscox admits that at the February 6, 2013 meeting, York and MKA advised that it would further respond to Paschen's November 20, 2012 total loss and 100% re-construction estimate with a written narrative shortly.  Defendant Hiscox denies the remaining allegations of Paragraph No. 27.

28.

Defendant Hiscox denies the allegations of Paragraph No. 28.

29.

Defendant admits that during the February 6, 2013 meeting, York advised Paschen that it had authority for an additional advance.  Defendant Hiscox denies the remaining allegations of Paragraph No. 29.

30.

Defendant Hiscox asserts that on February 21, 2013, it issued to Paschen a second advance payment in the amount of $3,168,204.31.  Defendant Hiscox denies all allegations of Paragraph No. 30 that are inconsistent with this payment made by Hiscox in accordance with the

terms and conditions of the Policy.   Defendant Hiscox denies the remaining allegations of Paragraph No. 30.

31.

Defendant Hiscox admits that MKA's February 19, 2013 written report providing expert commentary as it relates to Paschen's total loss, 100% re-construction November 20, 2012 16-volume document labeled South Plaquemines High School Hurricane Isaace Repair Estimate, was provided to Paschen on February 27, 2013.   Defendant Hiscox denies the remaining allegations of Paragraph No. 31.

32.

Defendant Hiscox admits that on March 8, 2013 Paschen through Marsh sent to York an updated repair estimate of $18.9 million.  Defendant Hiscox denies the remaining allegations of Paragraph No. 32.

33.

Defendant Hiscox admits that on or about April 8, 2013, Paschen submitted a written response to the February 19, 2013 MKA report.   Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 33, and the same, therefore, are denied.

34.

Defendant Hiscox admits that on or about April 26, 2013, Paschen submitted an updated repair estimate of $22.8 million.  Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 34, and the same, therefore, are denied.

10703143.1

35.

Defendant Hiscox admits that on April 26, 2013, York repeated its request that Paschen provide the actual bid documents, proposals, invoices, pay applications inclusive of the scope of work that supports the estimate numbers.  Defendant Hiscox further admits that it requested the support for the estimate prior to the May 1, 2013 meeting because Marsh indicated that the $22.8 million estimate was going to be the topic of the May 1, 2013 meeting.  Defendant Hiscox denies the remaining allegations of Paragraph No. 35.

36.

Defendant Hiscox denies the allegations of Paragraph No. 36.

37.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 37, and the same, therefore, are denied.

38.

Defendant Hiscox admits that at the May 1, 2013 meeting York and MKA requested the underlying support for Paschen's April 8, 2013 submission.   Defendant Hiscox denies the remaining allegations of Paragraph No. 38.

39.

Defendant Hiscox admits that between May 3, 2013 and May 7, 2013, Paschen sent twelve (12) 5" binders containing documentation relating to actual costs incurred by Paschen. Defendant Hiscox denies the remaining allegations of Paragraph No. 39.

40.

Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 40 that on May 13, 2013 Paschen requested an

additional advance of $8.5 million, and the alleged reasons for the alleged request, and the same, therefore, are denied.  Defendant Hiscox denies the remaining allegations of Paragraph No. 40.

41.

Defendant Hiscox admits that on May 16, additional information was forwarded to York, including a light fixture testing report by an outside, third party testing agency.  Defendant Hiscox lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 41, and the same, therefore, are denied.

42.

Defendant Hiscox admits that by May 20, 2013, MKA was still reviewing Paschen's various submissions, and that Paschen offered to meet with MKA to review and answer any questions MKA may have regarding the claim documentation.  Defendant Hiscox denies the remaining allegations of Paragraph No. 42.

43.

Defendant Hiscox admits that it was contacted directly by Marsh and that it advised Marsh that it was awaiting MKA findings for review prior to making any further payment decisions.  Defendant Hiscox denies the remaining allegations of Paragraph No. 43.

44.

Defendant Hiscox admits that on or about June 29, 2013, York advised Paschen that the current MKA estimate was $7,776,071, and that Paschen would receive an additional advance payment of $2.082 million.  Defendant Hiscox denies the remaining allegations of Paragraph No. 44.

45.

Defendant Hiscox asserts that on July 5, 2013, it issued to Paschen a third advance payment in the amount of $2,082,959, bringing the total amount received and advanced by

9

Hiscox on Paschen's claim to $6,792,067.21.   Defendant Hiscox denies all allegations of Paragraph No. 45 that are inconsistent with these payment made by Hiscox in accordance with the terms and conditions of the Policy.   Defendant Hiscox denies the remaining allegations of Paragraph No. 45.

46.

Defendant Hiscox admits that on July 12, 2013, Hiscox agreed to meet in Chicago on July 31, 2013 to further discuss Paschen's claim under the Policy.   Hiscox further admits that Hiscox noted in writing the following: "The view from our perspective is that we have provided a significant amount of information to you [Marsh] and the Insured [Paschen] and received little back in response."   *See* Exhibit 3 to Complaint.   Defendant Hiscox denies the remaining allegations of Paragraph No. 46.

47.

Defendant Hiscox admits that on July 12, 2013 it also provided MKA's Loss Measure. Defendant Hiscox denies the remaining allegations of Paragraph No. 47.

48.

Defendant Hiscox denies the allegations of Paragraph No. 48.

49.

Defendant Hiscox admits the allegations of Paragraph No. 49.

50.

Defendant Hiscox admits that on July 31, 2013, Paschen and Marsh met with Hiscox, York and MKA to discuss Paschen's claim under the Policy, and that Hiscox advised that no further payment could be made on Paschen's claim under the Policy at that time as further information provided by Paschen was still under review.   Defendant Hiscox denies the remaining allegations of Paragraph No. 50.

10

51.

Defendant Hiscox denies the allegations of Paragraph No. 51.

## COUNT I:  DECLARATORY JUDGMENT
(As against Hiscox)

52.

Defendant Hiscox restates and realleges its answers to paragraphs 1 through 51 of the Complaint as though full set forth herein.

53.

Defendant Hiscox admits that the Hiscox Policy provides coverage up to $37,164,000.00 for losses at the insured Project site, subject to the terms, conditions, limitations and exclusions of the Policy.  Defendant Hiscox denies the remaining allegations of Paragraph No. 53.

54.

Defendant Hiscox admits that by letter dated September 7, 2012, Paschen notified Hiscox in writing of a potential claim under the Policy for damage to the Project due to Hurricane Isaac. Defendant Hiscox denies the remaining allegations of Paragraph No. 54.

55.

Defendant Hiscox admits the allegations of Paragraph No. 55.

56.

Defendant Hiscox admits that York issued to Paschen a Reservation of Rights letter dated January 15, 2013.  Defendant asserts that the letter speaks for itself, and to the extent that the allegations of Paragraph No. 56 are inconsistent therewith, Defendant Hiscox denies same. Except as herein admitted and denied, the allegations of Paragraph No. 56 are denied.

57.

Defendant Hiscox admits that York issued to Paschen a Reservation of Rights letter dated January 15, 2013.  Defendant asserts that the letter speaks for itself, and to the extent that the

allegations of Paragraph No. 57 are inconsistent therewith, Defendant Hiscox denies same. Except as herein admitted and denied, the allegations of Paragraph No. 57 are denied.

58.

Defendant Hiscox denies the allegations of Paragraph No. 58.

59.

Defendant Hiscox denies the allegations of Paragraph No. 59.

60.

Defendant Hiscox denies the allegations of Paragraph No. 60.

61.

Defendant Hiscox denies the allegations of Paragraph No. 61.

62.

Defendant Hiscox admits that York issued to Paschen a second Reservation of Rights letter dated May 29, 2013. Defendant asserts that the letter speaks for itself, and to the extent that the allegations of Paragraph No. 62 are inconsistent therewith, Defendant Hiscox denies same. Except as herein admitted and denied, the allegations of Paragraph No. 62 are denied.

63.

Defendant Hiscox denies the allegations of Paragraph No. 63.

64.

Defendant Hiscox denies the allegations of Paragraph No. 64.

65.

Defendant Hiscox admits the allegations of Paragraph No. 65.

66.

Defendant Hiscox denies the allegations of Paragraph No. 66.

10703143.1

WHEREFORE, Defendant Hiscox respectfully prays that that this Honorable Court enter judgment in its favor and against the Plaintiff, dismiss this Count I with prejudice, and award Defendant Hiscox its costs sustained herein and grant Defendant Hiscox any further relief the Court deems just and proper.

## COUNT II: BREACH OF CONTRACT
(As against Hiscox)

67.

Defendant Hiscox restates and realleges its answers to paragraphs 1 through 66 of the Complaint as though full set forth herein.

68.

Defendant Hiscox denies that Paschen timely submitted and updated documentation to York in support of its claim for repairing the damages and losses sustained by Hurricane Isaac. Defendant Hiscox admits the remaining allegations of Paragraph No. 68.

69.

Defendant Hiscox asserts that the Policy speaks for itself, and to the extent that the allegations of Paragraph No. 69 are inconsistent therewith, Defendant Hiscox denies same. Defendant Hiscox denies the remaining allegations of Paragraph No. 69.

70.

Defendant Hiscox asserts that the Policy speaks for itself, and to the extent that the allegations of Paragraph No. 70 are inconsistent therewith, Defendant Hiscox denies same. Defendant Hiscox denies the remaining allegations of Paragraph No. 70.

71.

Defendant Hiscox asserts that the Policy, and specifically the Ordinance Or Law/ Demolition And Increased Cost Of Construction provisions, speaks for itself, and to the extent

13

that the allegations of Paragraph No. 71 are inconsistent therewith, Defendant Hiscox denies same.  Defendant Hiscox denies the remaining allegations of Paragraph No. 71.

72.

Defendant Hiscox asserts that the Policy, and specifically the Contractor's Extra Expense provisions, speaks for itself, and to the extent that the allegations of Paragraph No. 72 are inconsistent therewith, Defendant Hiscox denies same.  Defendant Hiscox denies the remaining allegations of Paragraph No. 72.


73.

Defendant Hiscox asserts that the Policy, and specifically the Debris Removal and Architects And Engineers Fees provisions, speaks for itself, and to the extent that the allegations of Paragraph No. 73 are inconsistent therewith, Defendant Hiscox denies same.  Defendant Hiscox denies the remaining allegations of Paragraph No. 73.

74.

Defendant Hiscox denies the allegations of Paragraph No. 74.

75.

Defendant Hiscox denies the allegations of Paragraph No. 75.

76.

Defendant Hiscox denies the allegations of Paragraph No. 76.

WHEREFORE, Defendant Hiscox respectfully prays that that this Honorable Court enter judgment in its favor and against the Plaintiff, dismiss this Count II with prejudice, and award Defendant Hiscox its costs sustained herein and grant Defendant Hiscox any further relief the Court deems just and proper.

## COUNT III: STATUTORY VIOLATIONS
(As against Hiscox)

77.

Defendant Hiscox restates and realleges its answers to paragraphs 1 through 76 of the Complaint as though full set forth herein.

78.

Defendant Hiscox admits that on or about November 20, 2012, Paschen submitted to York a 16-volume document labeled South Plaquemines High School Hurricane Isaac Repair Estimate, dated November 20, 2012, with a total estimate amount of $32,800,152 allegedly representing a total loss and 100% re-construction of the subject buildings to the time of the loss. Defendant Hiscox denies the remaining allegations of Paragraph No. 78.

79.

Defendant Hiscox asserts that on January 8, 2013, it issued to Paschen an advance payment in the amount of $1,540,903.90, including the amounts of $1,515,903.90 and $25,000.00.  Defendant Hiscox denies all allegations of Paragraph No. 79 that are inconsistent with this payment made by Hiscox in accordance with the terms and conditions of the Policy. Defendant Hiscox denies the remaining allegations of Paragraph No. 79.

80.

Defendant Hiscox asserts that on February 21, 2013, it issued to Paschen a second advance payment in the amount of $3,168,204.31, and that as of February 21, 2013 Hiscox had advanced to Paschen a total of $4,709,108.21.  Defendant Hiscox denies all allegations of Paragraph No. 80 that are inconsistent with these payments made by Hiscox in accordance with the terms and conditions of the Policy.  Defendant Hiscox denies the remaining allegations of Paragraph No. 80.

10703143.1

81.

Defendant Hiscox denies the allegations of Paragraph No. 81.

82.

Defendant Hiscox denies the allegations of Paragraph No. 82.

83.

Defendant Hiscox denies the allegations of Paragraph No. 83.

84.

Defendant Hiscox asserts that the referenced Louisiana statute sections speak for themselves, and to the extent that the allegations of Paragraph No. 84 are inconsistent therewith, Defendant Hiscox denies same. Defendant Hiscox specifically denies any failure on the part of Hiscox to comply with the referenced Louisiana statute sections or any duty or obligation alleged in Paragraph No. 84, and denies any liability to Paschen pursuant to the referenced Louisiana statute sections. Defendant Hiscox denies the remaining allegations of Paragraph No. 84.

85.

Defendant Hiscox asserts that the referenced Louisiana statute section speaks for itself, and to the extent that the allegations of Paragraph No. 85 are inconsistent therewith, Defendant Hiscox denies same. Defendant Hiscox specifically denies any failure on the part of Hiscox to comply with the referenced Louisiana statute section or any duty or obligation alleged in Paragraph No. 85, and denies any liability to Paschen pursuant to the referenced Louisiana statute section. Defendant Hiscox denies the remaining allegations of Paragraph No. 85.

86.

Defendant Hiscox asserts that the referenced Louisiana statute sections speak for themselves, and to the extent that the allegations of Paragraph No. 86 are inconsistent therewith, Defendant Hiscox denies same. Defendant Hiscox specifically denies any failure on the part of

10703143.1

Hiscox to comply with the referenced Louisiana statute sections or any duty or obligation alleged in Paragraph No. 86, and denies any liability to Paschen pursuant to the referenced Louisiana statute sections.  Defendant Hiscox denies the remaining allegations of Paragraph No. 86.

87.

Defendant Hiscox denies the allegations of Paragraph No. 87.

WHEREFORE, Defendant Hiscox respectfully prays that that this Honorable Court enter judgment in its favor and against the Plaintiff, dismiss this Count III with prejudice, and award Defendant Hiscox its costs sustained herein and grant Defendant Hiscox any further relief the Court deems just and proper.

**COUNT IV: NEGLIGENCE**
(As against York And MKA)

As the allegations of Count IV are not directed towards Defendant Hiscox, no answer is required and Defendant Hiscox makes no answer thereto.  Insofar as it might be alleged or inferred that any of the allegations of Count IV apply to Defendant Hiscox, Defendant Hiscox denies each and every allegation contained therein.

**COUNT V: NEGLIGENT PROFESSIONAL UNDERTAKING**
(As against York and MKA)

As the allegations of Count V are not directed towards Defendant Hiscox, no answer is required and Defendant Hiscox makes no answer thereto.  Insofar as it might be alleged or inferred that any of the allegations of Count V apply to Defendant Hiscox, Defendant Hiscox denies each and every allegation contained therein.

10703143.1

## AFFIRMATIVE DEFENSES

Without prejudice to its denial of the allegations contained in Plaintiff's Complaint, for its affirmative defenses to Plaintiff's Complaint, Defendant Hiscox states as follows:

1.    The policy contains the following sublimits and aggregate limits:

| POLICY SUBLIMITS & AGGREGATE LIMITS | $ 37,164,000 | physical damage (hard costs + owner supplied material) |
|---|---|---|
| | $ 0 | physical damage to Existing Property ☐ **Legal Liability**    ☐**All Risk rms if applicable based on the notation herein)** |
| | $ 0 | Delay In Completion-Soft Costs and/or Loss of Rental Income and/or Loss of Profits **(subject to scheduled sublimits & policy aggregate)** |
| **Application of all sublimits is per occurrence unless noted Otherwise** | $ 100,000 | physical damage to property in Offsite Temporary Storage and/or Offsite Fabrication **(per location)** |
| | $ 100,000 | or 20% of the amount of physical loss or damage to insured property, whichever is less – Expediting Expense |
| | $ 250,000 | Trees, Plants, Shrubs & Landscaping Materials **(maximum $2,500 per item including landscaping)** |
| **Sublimits are part of policy limit, not in addition thereto** | $ 25,000 | physical damage to Plans & Blueprints & Other Contract Documents |
| **An X placed next to annual aggregate or no aggregate indicates basis of coverage for Named Windstorm** | $ 2,500,000 | or 25% of the amount of physical loss or damage to insured property, whichever is greater – Debris Removal |
| | $ 500,000 | Ordinance & Law / Demolition & Increased Cost of Construction |
| | $ 100,000 | Contractor's Extra Expense |
| | $ 25,000 | Pollution & Contamination Cleanup & Decontamination **(Policy Aggregate)** |
| | $ 2,500,000 | Interior Water Intrusion Damage |
| | $ 25,000 | Claim Preparation Costs |
| | $ 25,000 | Mold & Fungus Remediation **(Policy Aggregate)** |
| | $ 3,716,400 | Or 10% of the claim amount whichever is less Architect's and/or Engineer's Fees in restoration following an insured loss |
| | $ 37,164,000 | **FLOOD\* (annual aggregate) except** |
| | $ 10,000,000 | **FLOOD\* in Special Flood Hazard Areas (SFHA), areas of 100 year flooding (Zone A, AE, AH, V and Shaded X), as defined by the Federal Emergency Management Agency or equivalent; (annual aggregate);** |
| | $ 37,164,000 | **NAMED    ☐ (annual    X    (no aggregate) WINDSTORM    aggregate)** |
| | $ 37,164,000 | **All Other    X    (no aggregate) WINDSTORM** |

**In no event shall these sublimits of liability increase the Policy Limit of Liability.**

The Plaintiff's claims may be limited by some or all of the foregoing policy sublimits and aggregate limits.

2.     The Policy contains the following deductibles:

**DEDUCTIBLES:**    The applicable amount shown below shall be deducted for each claim arising from insured loss or damage in any one **OCCURRENCE\***.  The Company shall be liable only for its proportion of the amount of insured loss or damage in excess thereof, subject to all terms and conditions of the policy.

In the event that more than one physical damage deductible shown hereon or specified in any endorsement issued hereunder shall apply to insured physical loss or damage in any new **OCCURRENCE\***, only the largest shall be applied.  Where an extension of coverage applies the base property damage deductible shall apply unless otherwise stated.   If Delay In Completion coverage is provided by this Policy, the **DEDUCTIBLE PERIOD\*** stated in the Delay In Completion Endorsement attached to the policy and also shown below will always be applied in addition to any dollar deductible or percentage (%) deductible stated for physical damage.

| | | |
|---|---|---|
| **When a percentage (%) is entered absent a corresponding minimum dollar amount, the percentage shall be applied without minimum. When a dollar amount is entered absent a corresponding percentage (%), the word minimum is deleted.** | $ 25,000 | physical loss of or damage to property insured, except as respects **WATER DAMAGE\*** and/or **INTERIOR WATER INTRUSION\*** other than Flood; |
| | $ 50,000 | |
| | $ 25,000 | offsite temporary storage and/or offsite fabrication; |
| | $ 25,000 | physical damage to trees, plants shrubs and landscaping; |
| | $ 25,000 | Physical Damage to plans, blueprints, drawings, renderings, specifications or other contract Documents and models at the **INSURED PROJECT\***; |
| | $ 50,000 | as respects the peril of **FLOOD\*** except if applicable |
| | $500,000 | as respects the peril of **FLOOD\*** for locations in Special Flood Hazard Areas (SFHA), areas of 100 year flooding (Zones A, AE, AH, V and Shaded X), as defined by the Federal Emergency Management Agency or equivalent. |
| | $ 50,000 | **WINDSTORM\*** except if applicable |
| | $     3 | % of the total insured values at risk at the time and place of loss subject to a minimum deduction of <u>$150,000</u> as respects the peril of **NAMED WINDSTORM\***; |

The foregoing deductibles are applicable to the Plaintiff's claims.

3.     The Policy provides as follows:

I.     **INTERIOR WATER INTRUSION:**

The Company will pay for loss or damage to covered property arising from, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not, entering the interior of any building(s) or structure(s) when the roof and outside walls are **incomplete\***.   However, if said exterior of the building is complete this limitation of coverage does not apply.  The Insured agrees that it will take all appropriate precautions to avoid loss or damage to covered property from the perils enumerated above.

**DEFINITION:**

\*Incomplete – means at the time of loss or damage the envelope of the building or structure which includes the

exterior walls and roofing system is not watertight based
on the structure's design.

To the extent the Plaintiff failed to take all appropriate precautions to avoid loss or

damage to covered property from the perils enumerated above, said loss and damage is not

covered by the Policy.

4.    The Policy provides as follows:

m.    **CLAIMS PREPARATION COSTS:**

This policy is extended to cover the reasonable and necessary
additional expenses incurred by the Insured which are directly
related to the preparation, substantiation and/or documentation of
any claim for direct physical loss or damage insured hereunder
and occurring during the policy period to insured property as a
result of a covered cause of loss under this policy.  Any costs
incurred for the services or efforts of a lawyer or a Public
Adjuster are expressly excluded.

The Company shall have no liability for any additional expense
hereunder unless and until a claim for a physical loss or damage
to insured property as a result of a covered cause of loss under
this policy has been submitted to and accepted by the Company.

To the extent Plaintiff is claiming costs incurred for the services or efforts of a lawyer or

a Public Adjuster, said costs are excluded by the Policy.

5.    The Policy provides as follows:

n.    **MOLD REMEDIATION EXPENSE:**

Notwithstanding the exclusion in the policy for loss or
damage due to mold, fungus, mildew and spores in the
event of direct physical loss or damage insured hereunder
and occurring during the policy period, this policy is
extended to cover mold remediation expenses incurred by
the Insured, made necessary by insured physical damage to
an Insured Project or insured property as provided under
the policy.  This extension of coverage only applies to the
portion of an Insured Project or insured property which
directly sustained the covered damage loss.

Mold remediation expense means the reasonable and
necessary costs not otherwise covered for:

1.   Testing the indoor air quality for mold;
2.   Testing the surfaces and materials of the Insured Project, insured property or contents for mold;
3.   Developing a mold remediation plan; and
4.   Implementing a mold remediation plan including the clean up, removal, containment, treatment or disposal of mold;

Mold remediation shall also mean the reasonable and necessary costs, including increased cost, not otherwise covered for:

1.   Removing debris solely due to mold; and
2.   Repairing and replacing the Insured Project or insured property damaged or removed solely due to mold.

Mold remediation expense does not apply beyond the provisions as provide herein including any other consequential loss or damage as a result of mold.

Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs.

Definitions:

(1)  fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;
(2)  mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);
(3)  spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

The foregoing provision may act to limit Plaintiff's recovery under the Policy.

21

6.     The Policy provides as follows:

## PART B – EXCLUSIONS AND LIMITATIONS

### 1.     PERILS EXCLUDED

This policy shall not pay for loss, damage or expense caused directly or indirectly and /or contributed to, in whole or in part, by any of the following excluded perils except as specifically allowed in a, b, c, d. f or j below:

**a.**  Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non- completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise, however the foregoing shall not exclude Delay In Completion Coverage when it is endorsed to this policy;

**b.**  Cost of making good faulty or defective workmanship or material, unless direct physical loss or damage by a peril not otherwise excluded ensues and then this policy will cover for such ensuing physical loss or damage only;

**c.**  Cost of making good fault, defect, error, deficiency or omission in design, plan or specification, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

**d.**   Wear and tear, gradual deterioration, inherent vice, latent defect, corrosion, rust, dampness or dryness of the atmosphere, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

**l.**  Loss or damage covered under any written or complied guarantee or warranty by any manufacturer or supplier, but only to the extent of recovery from such written or implied guarantee or warranty;

**n.**  Cessation of the work, whether total or partial, unless such cessation has been directly occasioned by loss or damage covered under the policy.  Cessation of the work, as used herein, shall not mean any period of time during which operations would not normally have been conducted

22

such as Saturdays, Sundays or Holidays, nor shall it mean seasonable inactivity planned in advance or labor actions beyond the Insured's control, provided the location of the **INSURED PROJECT\*** is maintained and protected against loss during such inactivity.

**r.**  Mold, mildew, fungus, spores or other micro-organism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

**u.**  Loss or damage arising from, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not to property stored in the open.

Plaintiff's claims are excluded and/or limited by reason of the foregoing exclusions and limitations.

7.    The Policy provides as follows:

### PART D – GENERAL CONDITIONS

**OBSERVANCE OF CONDITIONS:**

The due observance and fulfillment of the terms and conditions of this policy by the Insured, insofar as they relate to anything to be done or complied with by them, shall be a condition precedent to any liability of the Company to make payment for loss under this policy.

Plaintiff's claims may be barred and/or limited by reason of the foregoing provision.

8.    The Policy provides as follows:

**MISREPRESENTATION & FRAUD:**

10703143.1

This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

Plaintiff's claims may be barred and/or limited by reason of the foregoing provision.

9.    The Policy provides as follows:

**PROTECTION OF PROPERTY:**

The Insured will take reasonable steps to protect, recover or save the property insured and minimize any further or potential loss or damage when:

a.    The property insured has sustained direct physical loss or damage by an insured peril; or

b.    The property insured is in imminent danger of sustaining direct physical loss or damage from:

(1)    **NAMED WINDSTORM\*, WINDSTORM\*** or other related perils, but only when the potential for the same to occur has been forecasted by the National Weather Service or similar recognized weather forecast service(s);

(2)    **FLOOD\***, but only when the potential for the same to occur has been forecasted by the National Weather Service or the U.S. Army Corps of Engineers.

(3)    Fire;

The acts of the Insured or the Company in protecting, recovering or saving the property insured will not be considered a waiver or an acceptance of abandonment. The Insured and the Company will bear the expense incurred proportionate to their respective interests.

The foregoing shall not serve to increase the Limit of Liability stated in the DECLARATIONS and shall be subject to the deductible provisions of the policy.

To the extent the Plaintiff failed to take reasonable steps to protect, recover or save the property insured and minimize any further or potential loss or damage, Plaintiff may not recover for said resulting loss or damage.

10703143.1

10.     The Policy provides as follows:

**OTHER INSURANCE:**

Except as stated in **CONTRIBUTING INSURANCE** and **EXCESS INSURANCE** above, if there is other collectible insurance, this policy will cover as excess insurance and will not contribute with such other insurance.

To the extent there is other collectible insurance, this Policy will cover as excess insurance and will not contribute with such other insurance.

11.     The Policy provides as follows:

**RECOVERY OR SALVAGE:**

Any recovery or salvage excluding proceeds from subrogation and other insurance recovered or received after a loss settlement under this policy or any recovery from surety ship, insurance, reinsurance security or indemnity taken by or for the benefit of the Company will apply as if recovered or received prior to the loss settlement and the loss will be readjusted accordingly.

To the extent Plaintiff makes or has made any recovery and/or other insurance recovered or received, said recovery must be offset as to Plaintiff's claims herein.

12.     The Policy provides as follows:

**VALUATION:**

At the time and place of loss, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

**a.      Property Under Construction** – Cost to repair or replace the property lost or damaged at the time and place of loss with material of like kind and quality less betterment including contractor's profit and overhead and including owner's indirect expenses to the extent declared as part of the **TOTAL COMPLETED VALUE\***, but in no event to exceed the Limit of Liability; if not so replaced then loss shall be settled on the basis of Actual Cash Value with proper deduction for depreciation.

10703143.1

Contractor's profit and overhead and owner's indirect expenses were not declared as part of the total Completed Value and Plaintiff may not recover said sums.

13.     As a party to the insurance contract between Hiscox and Paschen/Nielsen, Plaintiff is bound by an implied duty of good faith and fair dealing.

Plaintiff breached that duty of good faith and fair dealing in one or more of the following ways in connection with the insurance coverage that it obtained from Hiscox and the insurance claim that it submitted to Hiscox in connection with the alleged damage to the subject property:

     a.    Submitting a written claim to Hiscox in the form of binders on or about November 28, 2012 for a total replacement cost loss of the subject property even though Plaintiff knew that the subject property was not a total loss.

     b.    Otherwise breaching the duty of good faith and fair dealing it owed to Hiscox to be determined in discovery.

Plaintiff's breaches of its duty of good faith and fair dealing in connection with the claim it submitted to Hiscox, as alleged above, are the cause of any alleged delay in relation to payments under the Policy, and impeded and delayed Hiscox's investigation and adjustment of Plaintiff's claim that is the subject of this lawsuit.

The above-alleged breaches by Plaintiff of the duty of good faith and fair dealing with regard to the Hiscox Policy, caused Hiscox to incur expert fees, investigation and adjusting expenses and other fees and costs, in relation to Plaintiff's claim and this lawsuit, which it would not otherwise have had to incur.

14.     The claimed losses and damages are a result of or are related to pre-existing damage and/or conditions on the Project and did not result from Hurricane Isaac.

15.     Defendant affirmatively asserts that it has committed no negligent or wrongful act or omission which proximately caused or contributed to the alleged damages and that at all times it has acted in good faith and in a reasonable manner.

16.     Plaintiff's recovery, if any, is limited to the applicable insurance policy, the terms, conditions and limitations of which are pled as if copied *in extenso*.

17.     Defendant affirmatively asserts that any loss or damages claimed in this litigation, in whole or part, were caused or contributed to by the negligent and/or wrongful acts or omissions of Plaintiff and/or third persons or entities for which Defendant is not responsible.

18.     Defendant affirmatively asserts that the claims are barred due to Plaintiff's failure to exhaust available remedies.

19.     Defendant is entitled to all appropriate set-offs and/or credits, including, but not limited to, all sums received by Plaintiff from any federal or state programs for losses due to Hurricane Isaac and/or all sums recovered by Plaintiff from any other source.

20.     Defendant affirmatively asserts the defense of independent, superseding or intervening cause.

21.     Coverage is prohibited to the extent Plaintiff committed fraud and/or made misrepresentations of fact either in the issuance of the subject insurance policy or during the investigation or adjustment of the claim.

22.     Defendant affirmatively asserts that it intends to rely upon such other affirmative defenses and/or denials as may become available or apparent during the discovery phase of this litigation and reserves the right to amend this answer to assert any such defense and/or denials.

23.     Defendant affirmatively asserts the claims must fail to the extent the Insured has failed to provide sufficient proof of loss of its claim, either in whole or in part.

10703143.1

WHEREFORE, Defendant HISCOX DEDICATED CORPORATE MEMBER LIMITED, THE SOLE MEMBER OF LLOYD'S OF LONDON SYNDICATE 3624 AND SUBSCRIBER TO POLICY NO. UNS2511179.10  respectfully requests that this Honorable Court enter judgment in its favor and against the Plaintiff, and that it be awarded its costs sustained herein, and for such other and further relief as this court deems just and proper.

**JURY DEMANDED**

Dated: November 15, 2013

10703143.1

Respectfully submitted,

*/s/Virginia Y. Dodd*

Virginia Y. Dodd, Bar Roll No. 25275
PHELPS DUNBAR, LLP
II City Plaza, Suite 1100
400 Convention Street (70802-5618)
Post Office Box 4412
Baton Rouge, Louisiana  70821-4412
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197
Email:  ginger.dodd@phelps.com

And

James M. Hoey (IL ARDC# 1233505), *pro hac vice pending*
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, IL  60603-1098
Telephone:  (312) 855-1010
Facsimile:  (312) 606-7777
Email:  jhoey@clausen.com

ATTORNEYS FOR HISCOX DEDICATED
CORPORATE MEMBER LIMITED, THE SOLE
MEMBER OF LLOYD'S OF LONDON
SYNDICATE 3624 AND SUBSCRIBER TO
POLICY NO. UNS2511179.10

10703143.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of November, 2013, she did electronically file the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to the parties who are registered participants with the System.  I hereby certify that I did mail or deliver a true and correct copy of the foregoing document to any non CM/ECF participants.

/s/ Virginia Y. Dodd
La. Bar Roll Number 25275
ginger.dodd@phelps.com

10703143.1